IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JESSIE WAYNE DIXON                :
                                  :
      Plaintiff,                  :      CIVIL ACTION 10-0175-WS-M
                                  :
v.                                :
                                  :
ROCHELLE HARVILLE, et al.,        :
                                  :
      Defendants.                 :

## REPORT AND RECOMMENDATION

Jessie Wayne Dixon, an Alabama prison inmate proceeding *pro
se* and *in forma pauperis,* filed a Complaint under 42 U.S.C. §
1983 and filed the following additional amendments: Plaintiff's
Motion to Amend Statement (Doc. 40), and Plaintiff's Motion to
Amend Statement Exhibit A (Doc. 43).[1]  This action was referred
to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local
Rule 72.2(c)(4), and is now before the undersigned.  For the
reasons stated below, it is recommended that the motion for
summary judgment of Defendants Rochelle Harville (Offender
Compliance Specialist for the Baldwin County, Alabama Sheriff's

---

[1]     The Court's Order (Doc. 33) converted the following
documents to a motion for summary judgment: Rochelle Harville's
Answer (Doc. 27), Defendant Spanish Fort's Chief of Police David
Edgar's Answer (Doc. 29), Defendant Chief Edgar's Special Report
(Doc. 30), and Defendant Rochelle Harville's Special Report
(Doc. 32).

Office)("Harville"), Donald Bettner (a Daphne Police

Officer)("Bettner"),[2] and David Edgar (Spanish Fort Chief Police)

("Edgar") be granted, and that Plaintiff's action against these

Defendants be dismissed.

## I. SUMMARY OF FACTUAL ALLEGATIONS

1.    From its review of the record, the Court summarizes

the parties' allegations that are material to the issues

addressed in this Report and Recommendation.

2.    The Plaintiff's allegations are for the most part

incomprehensible.  However, the court has construed the

Plaintiff's confusing pleadings to assert the following claims

and supporting facts.

3.    In the Prisoner Complaint for Inmate Action Under 42

U.S.C. § 1983 ("Complaint"), Plaintiff names Rochelle Harville,

Donna Betner,[3] and Spanish Fort Chief Police as Defendants (Doc.

1, p. 1).

4.    In January 2000, Plaintiff pled guilty to second

degree rape (Doc. 31-3, p. 3).  In October 2000, a warrant was

---

[2] The Court presumes the Plaintiff meant to identify Donald
Bettner not Donna Betner (*see* Doc. 30, p. 3; Doc. 31-2, p. 12),
and notes that this Defendant has not made an appearance in this
action nor is there proof of service of the Complaint upon this
Defendant.

[3] *See supra*, n. 2.

issued for the arrest of the Plaintiff because he had violated the Alabama Community Notification Act (the "Act") by establishing a residence within 1000 feet of a daycare in Daphne, Alabama (Doc. 31-1, ¶ 3).[4]  Plaintiff was arrested in October 2000.

5.    Plaintiff was released from jail in 2003 (*see* Doc. 30, p. 3; Doc. 1, p. 4).[5]  Upon any release, Plaintiff was required to comply with the Act due to his status as a sex offender (Doc. 32-1, pp. 2-3).

6.    Plaintiff attempted to register his address of 1408 Daphne Avenue in 2003 in connection with his release; however, Plaintiff was informed that this location was too close to a daycare in violation of the Act (Doc. 30, p. 3; Doc. 31-2, pp. 11-12).  Therefore, Plaintiff moved to an address at Driftwood Lane in Spanish Fort (Doc. 31-2, p. 11).

7.    Plaintiff resided at the address at Driftwood Lane in Spanish Fort for two years before Plaintiff's brother told

---

[4] It is not clear from the pleadings where Plaintiff was confined and when he was released in connection to the January 2000 sentence for his guilty plea of second degree rape.

[5] The Court notes that the Plaintiff states he was released from prison (Doc. 1, p. 3), while Defendant Edgar states that the Plaintiff was released from jail in Defendant's Special Report (Doc. 30, p. 3).  It is not clear where he was in custody.

Plaintiff that he could no longer live at that address (Doc. 31-2, pp. 13-15). Plaintiff did not know who told his brother about the need for Plaintiff to change his residence (Doc. 31-2, pp. 14-15).

8. Plaintiff subsequently moved to Coleman Lane in Spanish Fort (Doc. 31-2, pp. 14-15).

9. In section II of the Complaint, Plaintiff states that the complained-of-action took place at the Daphne Police Department around 2003 (Doc. 1, p. 3). Specifically, Plaintiff stated as follows:

> In 2003 I was released from prison[.] Donna Betner told me I could no longer live in my home[.] This is my residence for 44 years all my life I was born there[.] Told Ms[.] Harvill and Betner I was under the grandfather law and it did not change until 2006 I was sentence in 99-2000[.] Donna Betner told me I had to move[.] I move to Driftwood Lane for two years[.] The Chief of Spanicf (sic) fort police Department told me I had to move after I'v (sic) been there for two year[.] [H]e said there was a child care place there and I had to move[.] [W]hy it took to (sic) years to tell me there was a day care there 2 years[.]

(Doc. 1, p. 3).

10. Plaintiff's claim against Defendant Harville is that he "was indicted for 1 degress (sic) drop to 2 degree rape 13-11-200[.] The indictment doesent (sic) track the language of the statue (sic)" (Doc. 1, p. 4). The supporting facts for the claim again Defendant Harville are articulated by Plaintiff as

follows: "Date NA 2003 location Daphne and Spanish Fort and Bay
Minette" (Doc. 1, p. 4). Plaintiff also claims that Defendant
Harville "violated [his] right by making [him] move from [his]
home for 44 years" (Doc. 1, p. 4). The supporting facts for
this claim are that the Defendant made Plaintiff move from his
home of forty-four years and a Spanish Fort address (Doc. 1, p.
4).

11. The Court construes Plaintiff's claim against
Defendant Edgar to be for making the Plaintiff change residences
(Doc. 1, p. 5). The supporting facts for this claim are set
forth by Plaintiff as follows: "I live at Driftwood in Spanish
Fort for 2 year[.] Chief said there was a day care there[.]
[W]hy it took to (sic) years to tell me this" (Doc. 1, p. 5).
However, this information conflicts with his testimony where
Plaintiff stated that his brother told him he had to move from
the Driftwood Lane address, but Plaintiff did not know who told
his brother this information (*see* Doc. 31-2, pp. 13-15).

12. The Court construes Plaintiff's claim against
Defendant Bettner to be for "violat[ing] [Plaintiff's] right by
making [him] move for [his] home for 44 years" (Doc. 1, p. 4).
The supporting facts for this claim are that the Defendant made
Plaintiff move from his home of forty-four year and a Spanish
Fort residence (Doc. 1, p. 4).

13.  Plaintiff's request for relief is as follows:

"I won't a lots of money for the 10 years sentence and the five

5 years sentence[6] for the pain I need mental help[.] I'll never

be the same and take a blood test and not register when fines

out that I'm intergent" (Doc. 1, p. 6).

14.  Defendant Harville filed an Answer wherein she denies

the allegations made against her by the Plaintiff, asserts the

affirmative defenses of qualified and absolute immunity, and

further denies depriving the Plaintiff of any rights to which he

is entitled (Doc. 27).  In her Special Report, she explains that

she is an Offender Compliance Specialist, which includes

directing investigations into addresses provided by sex

offenders as residences and making sure that these residences

are proper for a sex offender under the act (Doc. 32, pp. 3-4).

15.  Defendant Edgar filed an Answer wherein he denies the

allegations made by the Plaintiff, and asserts the affirmative

defense of immunity as well as other defenses (Doc. 29).

Additionally, in the Special Report filed by Defendant Edgar, he

---

[6]     The Court is not aware of any five year sentence that
the Plaintiff has been subject to, and it remains unclear from
all of the Plaintiff's pleadings what this sentence would be.
The Court construes the ten year sentence to be for the second
degree rape charge, for which he served one year and three years
supervised probation (*see* Doc. 31-3, p. 3).

explains that he had no involvement with the Plaintiff since the October 2000 arrest (Doc 30, p. 3; Doc. 31-1, pp. 2-3).

16. In Plaintiff's Motion to Amend, additional facts are included in the attached statement from Nicholas Summers, along with the statement that "Mrs Rochelle is a raceist (sic) to me and other with cases like my case" (Doc. 40, p. 1).

17. Nicholas Summer's statement read, in part, as follows:

> I was incarcerated at the time and was brought to the docket to talk to Rochelle Harville. She asked me if I allowed Mr. Dixon to use my address and I responed (sic) yes. She then proceeded to tell me that Mr. Dixon was a menace to society and is a convicted sex offender. She also tried talking to me in a forceful way to convince me to change my mind, however she seemed to be intent and mindset on keeping Mr. Dixon incarcerated indefinitely. I still stood by my decision to allow Jessie Dixon use of my address.

(Doc. 40, p. 2).

18. Also attached to Plaintiff's Motion to Amend was the Inmate Grievance Form (Doc. 40, p. 3). The Grievance Form indicated that Plaintiff had previously filed a grievance regarding a violation that occurred on or about March 24, 2011 (*Id.*). The grievance was described as follows:

> I Mr. Dixon submit and address Mr. Tyler C. Williams 11005 Broughton around or about 3/24/2011 to Ms. Rochelle Harville on March 25, 2011 Ms. Harvelle in form (sic) me that Sgt Frank has not been able to contact Mr. William he was sent to Metrow In Mobile I had already explained that I could stay at that address ... Mas Havelle have done everything in her power to keep me lock up on she was to check the

address to see if no kid was there on 4/8/2011 Miss
Harvelle to me that no one was at the address that I
submitted to ... submit another on on and she'll
consider another one one ... or about I submitted
another one on 4/8/11 Told me that Bibb County have a
hold on me[.] The Sheriff of Bibb County have to be
responsible for verifying my address I have not been
sentence yet so Baldwin County is responsible for me
Ms. Havelle is not doing her job ... and have a
problem with ... Mr. Dixon ... Havelle is race ... to
Mr. Dixon and other ... like Mr. Dixon…"

(Doc. 40, p. 3).

19.  Plaintiff filed a Motion to Amend Statement Exhibit A,

which included additional facts (Doc. 43).  Plaintiff stated

that on July 3, 2010 he was released from the Baldwin County

Jail, and that Defendant Harville showed Plaintiff a form

entitled "Notice of Requirement for Criminal Sex Offenders to

Submit Actual Address of Residence" and requested that he sign

the form (Doc. 43, pp. 1-2).  Plaintiff admits that he was

sentenced under Alabama Code 13-11-200, but stated that "if any

new law was comply to [him.] [he] never went to Court to let the

Judge sentence [him] to any new law" (Doc. 43, p. 2).  Attached

to this motion is a form entitled "Notice of Requirement for

Criminal Sex Offenders to Submit Actual Address of Residence"

which cites the Alabama Community Notification Act Statute

Sections 15-20-22 and 15-20-26 and notifies the offender that he

or she is required "to submit the actual address to [Defendant]

Rochelle Harville where [the offender] plan[s] to reside upon

8

release" (Doc. 43, pp. 4-5). The form specifically sets out

Section 15-20-22, in part, as follows:

(a) One hundred-eighty (180) days prior to the release of an
adult criminal sex offender, the following shall apply:

    (1) The responsible agency shall require the adult
criminal sex offender to declare, in writing or by
electronic means approved by the Director of the
Department of Public Safety, the actual address at
which he or she will reside or live upon release and
the name and physical address of his or her employer,
if any. Any failure to provide timely and accurate
declarations shall constitute a Class C felony. Any
adult criminal sex offender in violation of this
section shall be ineligible for release on probation
or parole. Any adult criminal sex offender in
violation of this section who is to be released due to
the expiration of his or her sentence shall be charged
with violating this section and, upon release, shall
immediately be remanded to the custody of the Sheriff
of the county in which the violation occurred. Any
adult criminal sex offender charged with violating
this section may only be released on bond on the
condition that the offender is in compliance with this
section before being release.

(Doc. 43, p. 4). The form also sets out Section 15-20-26 as

follows:

(a) Unless otherwise exempted by law, no adult criminal sex
offender shall establish a residence or any other living
accommodation or accept employment within 2,000 feet of
the property on which any school or child care facility
is located.

(b) Unless otherwise exempted by law, no adult criminal sex
offender shall establish a residence or any other living
accommodation within 1,000 feet of the property on which
any of his or her former victims, or the victims'
immediate family members reside.

(c) No adult criminal sex offender shall establish a
residence or any other living accommodation where a minor
resides. Notwithstanding the foregoing, an adult criminal
sex offender may reside with a minor if the adult

criminal sex offender is the parent, grandparent, or
stepparent of the minor, unless one of the following
conditions applies:
(1)  The adult criminal sex offender's parental rights
     have been or are in the process of being terminated
     as provided by law.
(2)  The adult criminal sex offender has been convicted
     of any criminal sex offense in which any of the
     offender's minor children, grandchildren, or
     stepchildren were the victim.
(3)  The adult criminal sex offender has been convicted
     of any criminal sex offense in which a minor was the
     victim and the minor resided or lived with the
     offender at the time of the offense.
(4)  The adult criminal sex offender has ever been
     convicted of any criminal sex offense involving a
     child, regardless of whether the offender was
     related to or shared a residence with the child
     victim.
(d)  No adult criminal sex offender shall be permitted to
     willfully or knowingly come within 100 feet of any of his
     or her former victims, except as elsewhere provided by
     law, or make any visual or audible sexually aggressive or
     obscene gesture, sound, or communication at or to a
     former victim or a member of the victim's immediate
     family.

(Doc. 43, pp. 4-5).

    20.  Plaintiff also filed a document entitled "Order Motion

for Summary of Judgment" which included a duplicate statement

from Nicholas Summers that had already been included in a

previous pleading, and a "Motion to Subponea"[7] (Doc. 45).

---

[7] The Court notes that the "Motion to Subponea" is written in
Plaintiff's handwriting even though it states at the beginning
the writer's name is Nicholas Summers (Doc. 45, p. 6).

21.   In Defendant Harville's affidavit, she explains that
due to Plaintiff's classification as a sex offender and having
registered with the Baldwin County Sherriff's Office, a file has
been kept regarding Plaintiff's actions, specifically his place
of intended or actual residences (Doc. 32-1, p. 2), and a copy
of the file is attached to the Special Report (*see* Docs. 32-3 –
32-6).

22.   During the time Plaintiff's residence has been
monitored, Plaintiff has had a number of addresses, and on
several occasions "state law has required that the Plaintiff be
incarcerated in the Baldwin County Corrections Center because of
his failure to either supply an address, or actually live in[,]
a location or under conditions as required by Alabama law for
persons of his status" (Doc. 32, p. 4).

23.   Instances of when Plaintiff failed to meet the
requirements of the Act are as follows:

      a.    November 3, 2010: Plaintiff submitted Mr.
Celester Edwards' address as an intended residence (Doc. 32, p.
5; Doc. 32-1, p. 3).  However, when the Baldwin County Offender
Compliance unit contacted Mr. Edwards, he stated that the
Plaintiff asked him to use Mr. Edwards' address as a mailing
address, not a residence address, and did not allow the

Plaintiff to live with him at that address (Doc. 32, p. 5; Doc. 32-1, p. 3).

      b.    July 8-29, 2010: Plaintiff reported to the Compliance Unit that he was living in a doublewide trailer at a certain location (Doc. 32, p. 5; Doc. 32-1, pp. 3-4). In order to validate whether Plaintiff was actually living at the provided address, officers used various methods to determine that he dwelled at the reported location, including the following ways: observed the location, taped doors, checked outbuildings, and photographed the location (Doc. 35, p. 5; Doc. 32-3, p. 4; Doc. 32-1, pp. 3-4). After the officer's observation methods, it was determined that no one, including Plaintiff, lived at that location (Doc. 35, p. 5; Doc. 32-1, pp. 3-4).

      c.    May 31, 2010: Plaintiff submitted a residence address with Alexander Griffin, but the Compliance Unit found that this address was too close in proximity to two childcare facilities; thus, this address was not sufficient to release the Plaintiff (Doc. 35, p. 6; Doc. 32-1, p. 4).

      d.    April 23, 2010: The Plaintiff gave the Compliance Unit another potential address in Bay Minette for residence upon his release, but the apartment owner told the Compliance Unit

that the Plaintiff would not be allowed to live there (Doc. 35, p. 6; Doc. 32-1, p. 4).

e.   April 10, 2010: The Plaintiff gave the Compliance Unit a potential address in Mobile where Alice Williams resided; however, upon contact by the Compliance Unit, Alice Williams stated that she changed her mind and the Plaintiff could not live with her (Doc. 35, p. 6; Doc. 32-1, p. 4).

f.   April 1, 2010: Plaintiff gave the Compliance Unit an address at "Taylor Barn", but this address did not comply with the Act's requirements (Doc. 32, p. 6; Doc. 32-1, p. 5).

g.   March 2, 2010: Plaintiff gave the Compliance Unit an address of the home of Latasha Dixon, but it was determined it was not a proper address because children lived on that property (Doc. 32, p. 7; Doc. 32-1, p. 5).  Plaintiff also requested to live on a shed on that property, but the shed did not qualify as a residence since it did not have a bathroom, cooking facility, or utilities (Doc. 32, p. 7; Doc. 32-1, p. 5).

h.   March 1, 2010: Plaintiff gave the Compliance Unit an address on Driftwood Lane in Spanish Fort, but the location was too close to a childcare facility and did not comply with Alabama law (Doc. 32, p. 7; Doc. 32-1, p. 5).

i.   February 19, 2010: Plaintiff had reported to the Compliance Unit that he was living with Mr. Coleman in Spanish

Fort (Doc. 32, p. 7; Doc. 32-1, p. 6). However, the Compliance Unit contacted Mr. Coleman, and he stated that the Plaintiff was not allowed to live on his property; thus Plaintiff needed to supply another residence address (Doc. 32, p. 7; Doc. 32-1, p. 6).

24. Defendant Harville denies being a racist, "bears [Plaintiff] no animosity of any kind," and "in all her dealings with the Plaintiff, merely sought to enforce the laws of the State of Alabama as her office and title require" (Doc. 32, pp. 8-9).

25. After searching the sex offender registry, at the present time, the Court notes that the Plaintiff is in the Baldwin County Corrections Center.

## II. PROCEDURAL ASPECTS OF THE CASE

1. On April 14, 2010, Plaintiff filed the present § 1983 Complaint (Doc. 1) seeking damages for mental pain and anguish against Defendants Harville, Bettner, and Edgar.

2. Through Plaintiff's complaint and amendments, the Court understands that the Plaintiff challenges his ten year sentence, claims that Defendants Edgar, Bettner, and Harville violated a right for requiring Plaintiff to move from residences too close to day care facilities, and challenges his confinement resulting from Defendant Harville's racism and her

14

implementation of the Act which discriminates against Plaintiff due to his indigency (*see* Docs. 40, 43).

3.    Defendant Harville filed an Answer and Special Report denying violating Plaintiff's constitutional rights, and included her affidavit, Plaintiff's Sworn Statement, and the Plaintiff's Compliance Unit File as proof thereof (Docs. 27, 32).

4.    Defendant Edgar filed an Answer and Special Report denying violating Plaintiff's constitutional rights, and attached exhibits, which included his affidavit, the Plaintiff's Sworn Statement, the Plaintiff's certified criminal record, and a case action summary as proof thereof (Docs. 29-31).

5.    On February 25, 2011, the Court converted Defendant's Answers and Special Reports to a motion for summary judgment (Doc. 33).

6.    Defendant Edgar filed a Memorandum of Law in Support of Special Report (Doc. 39) and a Response to Plaintiff's Motion to Amend Statement (Doc. 42).

7.    Plaintiff filed a document entitled "Order Motion for Summary Judgment" (Doc. 45).

8.    Defendant Harville filed a Response to Plaintiff's Motion to Amend/Correct Statement (Doc. 50).

9.  These motions, amendments, and responses are now
before the Court.

III. SUMMARY JUDGMENT STANDARD

1. In analyzing the propriety of a motion for summary
judgment, the Court begins with these basic principles.  The
*Federal Rules of Civil Procedure* grant this Court authority
under Rule 56 to render "judgment as a matter of law" to a party
who moves for summary judgment.

2. "[S]ummary judgment is proper 'if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact. . . .'"  *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed.R.Civ.P. 56(c)).

3. All of the evidence and factual inferences reasonably
drawn from the evidence must be viewed in the light most
favorable to the nonmoving party.  *Adickes v. S.H. Kress & Co.*,
398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372
F.3d 1250, 1280 (11th Cir. 2004).

4. However, Rule 56(e) states that:

> When a motion for summary judgment is
> properly made and supported, an
> opposing party may not rely merely on
> allegations or denials in its own
> pleading; rather, its response must --
> by affidavits or as otherwise provided
> in this rule -- set out specific facts

16

showing a genuine issue for trial.  If
the opposing party does not so respond,
summary judgment should, if
appropriate, be entered against that
party.

Fed.R.Civ.P. 56(e).

    5. "[T]here is no issue for trial unless there is

sufficient evidence favoring the nonmoving party for a jury to

return a verdict for that party. . . .  If the evidence is

merely colorable, . . . or is not significantly probative, . . .

summary judgment may be granted." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted).

    6. "Summary judgment is mandated where a party 'fails to

make a showing sufficient to establish the existence of an

element essential to that party's case, and on which that party

will bear the burden of proof at trial.'" *Custom Mfg. & Eng'g,*

*Inc. v. Midway Servs., Inc.*, 508 F.3d 641, 647 (11th Cir. 2007)

(citations omitted).

## IV. DISCUSSION

    Because Plaintiff is proceeding *pro se* in this action, the

pleadings shall be given a liberal construction in the interest

of justice. *See* Fed. R. Civ. P. 8(e)("Pleadings must be

construed so as to do justice."); *Boxer X v. Harris*, 437 F.3d

1107, 1110 (11th Cir. 2006)("Pro se pleadings are held to a less

stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.")(quotations omitted), *cert. denied*, 549 U.S. 1323, 127 S.Ct. 1908 (2007)).

A.  <u>Plaintiff fails to articulate which right, if any, was violated when Defendants did not allow him to reside at addresses in close proximity to child care facilities in violation of the Act.</u>

1.  The Court construes Plaintiff's claims against Defendants Bettner, Edgar, and Harville to be that they made the Plaintiff move from his residence at 1408 Daphne Avenue in 2003 and from his residence in Spanish Fort in 2005 because he was a sex offender living too close to child care centers in violation of the Act (*see* Docs. 1, 30, 31-2).

2.  To articulate a claim under § 1983, plaintiff must allege that a (1) defendant deprived him of a right secured under the Constitution or federal law, and (2) such deprivation occurred under color of state law. *Arrington v. Cobb County*, 139 F.3d 865, 872 (11th Cir. 1998); *U.S. Steel, LLC v. Tieco, Inc.*, 261 F.3d 1275, 1288 (11th Cir. 2001).

3.  Plaintiff does not articulate which right, if any, has been violated. *See Arrington*, 139 F.3d at 872; *U.S. Steel, LLC*, 261 F.3d at 1288. Also, Plaintiff does not ask for any specific relief in connection with this claim against these Defendants.

4.  Therefore, this claim is due to be dismissed.

18

B.  Plardntiff's challenge of his ten year conviction is not properly brought under § 1983.

1.  Plaintiff challenges his ten year sentence for his state court sex offense charge under § 1983, yet makes this claim against no particular actor (Doc. 1).

2.  Section 1983 imposes liability on a "person" who under the color of state law deprives another person "of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983.

3.  "Section 1983 is no[t] [a] source of substantive federal rights", but merely provides a remedy for deprivations of federal statutory and constitutional rights. *Whiting v. Traylor*, 85 F.3d 581, 583 (11th Cir. 1996)(citation omitted).

4.  "A state prisoner may seek federal-court § 1983 damages for unconstitutional conviction or confinement, *but only if he has previously established the unlawfulness of his conviction or confinement*, as on appeal or on habeas."  *Heck v. Humphrey*, 512 U.S. 477, 498, 114 S.Ct. 2364, 2378, 129 L.Ed.2d 383 (1994)(emphasis added); *see also Williams v. Dunn*, 2007 WL 1424551, *3-4 (S.D. Ala. 2007).

5.  First, Plaintiff fails to identify an actor and/or an entity to hold liable for his constitutional deprivation. *See* 42 U.S.C. § 1983.

6.   Second, Plaintiff fails to identify which, if any,
right was violated given § 1983 in and of itself does not create
any substantive rights. *See Whiting*, 85 F.3d at 583.  Also, the
Court is unable to determine from the pleadings the proper
right, privilege, or immunity Plaintiff claims has been
violated.

7.   However, even if the Plaintiff intended to challenge
his actual conviction and argue that it is invalid, this claim
would not be a proper § 1983 action.  Rather, a challenge to
Plaintiff's actual conviction would be proper under habeas
corpus. *See Heck,* 512 U.S. at 498.

8.   Thus, Plaintiff's § 1983 claim challenging his ten
year sentence is due to be dismissed.

C.   Plaintiff's challenge of his confinement by Defendant
Harville is not properly brought under § 1983.

1.   Plaintiff claims that Defendant Harville violated his
equal protection rights by: (1) keeping him confined due to his
race and (2) by implementing the Act which discriminates against
him due to his indigency (*see* Docs. 1, 40, 43, 45).  The Court
interprets Plaintiff's pleadings to mean that Plaintiff seeks
relief in the form of release from his confinement under § 1983
(*see* Docs. 1, 40, 43, 45).

2.   Claims challenging the fact of conviction "fall within
the 'core' of habeas corpus," while claims challenging the

conditions of confinement may be brought in a civil rights action under § 1983. *Nelson v. Campbell*, 541 U.S. 637, 643, 124 S.Ct. 2117, 2122, 158 L.Ed.2d 924 (2004).

3.    Congress "has determined that habeas corpus is the appropriate remedy for state prisoners attacking the validity of the fact or length of their confinement[.]" *Preiser v. Rodriguez*, 411 U.S. 475, 490, 93 S.Ct. 1827, 1836, 36 L.Ed.2d 439 (1973).

4.    As explained above, § 1983 does not provide a source of substantive federal rights. *See Whiting*, 85 F.3d at 583.

5.    Recently, the Eleventh Circuit Court of Appeals decided whether a sex offender's § 1983 action was improperly dismissed, or properly dismissed and should have been brought as a habeas corpus action.  *Gipson v. Jefferson County Sherriff's Office*, 613 F.3d 1054 (11th Cir. 2010).  While at first blush the facts in *Gipson* and this action appear to be similar, *Gipson* is inapposite to this action because Plaintiff has not requested a hearing and only seeks relief, if any, in the form of release from confinement.

6.    In *Gipson*, the Plaintiff detainees were convicted of a sex offense, completed the terms of their imprisonment, but were kept in state custody since they were unable to meet the Act's requirements. *Id*. at 1055.  Specifically, the Plaintiffs were

unable to provide a resident address before the expiration of their sentence, and were therefore remanded to custody at the time of release pursuant to Ala. Code. § 15-20-22(a)(1)(a). *Id*. The Plaintiffs were unable to comply with the Act because "they [we]re indigent and therefore ha[d] no residential address." *Id*. The Plaintiffs proceeded to file a § 1983 suit, and alleged that their constitutional rights were violated because the State "automatically impos[ed] incarceration because of indigent status and d[id] so *without a hearing*." *Id*. (emphasis added).

7.    The Plaintiffs sought the following relief: "(1) a procedure to determine whether they are indigent and if so, how they can comply with the Act without being indefinitely detained; and (2) a declaration that the Act which keeps them detained is unconstitutional because it fails to provide a hearing that addresses their indigency." *Id*.

8.    The district court dismissed the case because it reasoned that "28 U.S.C. § 2254 is the exclusive remedy for claims where success for the plaintiffs necessarily means either immediate release from that confinement or the shortening of its duration." *Id*. at 1055 (citation and quotation omitted).

9.    However, the Court of Appeals reversed the lower court because the plaintiffs' claims in *Gipson* were procedural due process claims in the form of a request for a hearing, and

such would not necessarily result in immediate release or effect the fact of conviction. *Id*. at 1055. Thus, the plaintiffs in *Gipson* properly brought forth their claims under § 1983.

10. Plaintiff in this action has not made a claim requesting a hearing or for any other procedural due process deprivations. Rather, the Court interprets that the Plaintiff complains of his confinement in violation of the Equal Protection clause due to: (1) Defendant Harville's racist actions and (2) Defendant Harville's implementation of the Act which discriminates against him due to his indigent status (*see* Docs. 40, 43, 45). Ultimately, Plaintiff seeks to be released from confinement (*see* Docs. 40, 43, 45).

11. Plaintiff's challenge to his confinement is not properly brought under § 1983 since the Plaintiff challenges the confinement itself rather than the conditions of his confinement. *See Nelson*, 541 U.S. at 642; *Preiser*, 422 U.S. at 490.

12. Unlike the Plaintiffs in *Gipson*, Plaintiff in this action does not request a hearing. *See Gipson*, 613 F.3d at 1055.

13. Plaintiff's claims against Defendant Harville for being a racist and for implementing the Act which discriminates against his indigent status connected to his request for relief

to be released is not a proper § 1983 action; thus, these claims are due to be dismissed.

## V.  CONCLUSION

Based on the foregoing, it is recommended that the motion for summary judgment of Defendants Harville and Edgar (Docs. 27, 29, 30, 32) be granted, and that Plaintiff's action be dismissed.[8]

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

DONE this 18th day of July, 2011.


s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

---

[8] As set out above, the Court notes that Defendant Bettner has not made an appearance in this action. However, in the event that he did make an appearance, the Court would find that the Plaintiff failed to articulate a claim against him in this action and Defendant Bettner would be entitled to summary judgment in his favor.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.   ***Objection***.   Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.   Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.   *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[15] after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.   The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.   It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.   Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

---

[4] Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]"  Fed.R.Civ.P. 72(b)(2).

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded)***. Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.